## MARTIN FARRELL v. CHRISTOPHER FARRELL.

IF a father neglects, or refuses to support and maintain his son during his minority, or denies him a home, or discards or abandons him, so that he is forced to labor abroad to procure a living for himself, he is not entitled to the earnings of such son ; because under such circumstances the law will imply that the father has emancipated the son from his service, and conceded to him the right to enjoy the fruits or profits of his own labor.

A father may also voluntarily and expressly emancipate his minor son. as by authorizing him to go out and labor for his own benefit. Or emancipation may be implied from the conduct and relations of the parties, that is to say, the emancipation or freedom of the son to labor for his own living, may be inferred from the fact that his father has knowingly permitted him to enter into contracts and manage business for himself, or on his own account for a considerable length of time. Or when he makes a contract for his services on his own account, and the father knows of it and makes no objection, there is, it seems, an implied assent on his part that the son shall have his own earnings.

If a father emancipates his minor child, and such child by industry accumulates money, the money is his money, and not his father's. And if the father receives money from such minor child, not as due or belonging to himself, but receives and recognizes it as money belonging to his child, he cannot afterward legally claim or hold it as his own, on the ground of its being the fruits or profits of such child's labor; and more especially, if it was understood between them that the father received it, either to invest or hold it, for his child's benefit. And an action for money had and received will lie at the suit of such son against the father

to recover it, notwithstanding it was understood between them that the father was to buy a house and lot with it for his son, and which he did buy, but in his own name, and afterward sold as his own property.

ASSUMPSIT for money had and received with the usual pleas. The plaintiff was the son of the defendant, and the action was for money had and received to and for his use whilst he was yet a minor. The evidence was that he had been very harshly treated by his father and stepmother in his boyhood and until he was sixteen or seventeen years of age, when he left his house and hired himself out to the Messrs. duPont on the Brandywine for a year or more, receiving his own wages and entirely supporting and clothing himself without any assistance from, or expense to his father, in the meanwhile; and who had declared that he was glad he was gone, and that he should never come home again. Afterward, on the breaking out of the rebellion, he sought and obtained employment as a wagon-master in the army of the United States in Virginia, and remitted from time to time, money to his father, amounting in the aggregate to seven or eight hundred dollars, to pay for a house in the city of Wilmington, which he wished him to buy for him, if he could find one which he thought would suit him when he returned from the war, and which he purchased before his return, paying nine hundred dollars for it, but took the deed for it in his own name, and afterward refused to convey it to him, or to account to him for the money which he had in the meanwhile remitted to him for that purpose, and which the defendant had since sold on his removal to Philadelphia, where he had invested the proceeds of the sale of it in the purchase of a house there in his own name also.

*Gordon*, for the plaintiff. Notwithstanding a father is in general entitled in law to the services of his son, and to the wages of his labor when in the service of another for hire, as long as he is a minor, because he is under a corresponding obligation imposed upon him by law to support and maintain him at all events, yet, if he fails to discharge

that obligation, or by neglect or ill-usage constrains him to leave his house and to provide for his own maintenance by his own labor and industry, and without its costing the father anything; and particularly, if he sanctions the conduct of his son in such a case, either by his express, or his tacit consent, and assents to his receiving the wages or the entire fruits of his own labor, and allows him to contract with others as one having full authority and discretion to act for himself, he thereby relinquishes and forfeits all his parental claims to his services, or to any compensation whatever for them when rendered to others. And if under such circumstances, he receives his wages or his earnings with or without the consent of the son, he but receives them as any other person would, for his use and benefit, and is justly and legally liable to account to him for them. And more especially will this principle apply, and with peculiar force and justice, when such an unnatural parent, either forces such a son to go, or consents to his going into a service of such unusual hazard and hardship and danger, as had been proved in this case; and, therefore, the present action would lie at the suit of the plaintiff against the defendant, for money had and received to and for his use and benefit. 1 *Pars. on Contr.* 257. *Burlingame v. Burlingame,* 7 *Cow.* 92. *Reeves' Dom. Relations* 291. *Jemisson v. Graves,* 2 *Black. Rep.* 449. *Tillotson v. McCrillis,* 11 *Ver.* 477. *Chase v. Smith,* 5 *Ver.* 556. *Chase v. Elkins,* 2 *Ver.* 290. *Whiting v. Earle,* 3 *Pick.* 201. *Nightingale v. Worthington,* 15 *Mass.* 272.

*T. F. Bayard,* for the defendant. In most, if not all, of the States from which the decisions have been cited on the other side, there were special statutory provisions on the subject, but we had none here. *Reeves' Dom. Relations* 422, note 1. 2 *Kent's Com.* 163. 7 *Mass.* 105. The general rule of law was that a father is entitled to the earnings of his son while under age; and while he might admit that all the cases cited constituted exceptions to the general principle, yet none of them went to the extent contended for

on the other side; for they were all cases in which the action was by the minor, not against his father, but against another person, and against the party who had received the benefits of his service, and where the defence was that the father was alone entitled to sue for the service, as the only party to whom the wages for it were legally due and payable ; and in which it would have been grossly inequitable and unjust to allow such a party to defeat the action of the son on the ground of his minority, and that the pay for his services was legally due to his father, but who at the same time set up no claim whatever to it.   But the case now before the court was wholly different, for here the suit was by the son directly against the father himself, for money had and received by him to the use of his son for services rendered to another during his minority, and that too, after he had voluntarily allowed his father to receive it at the time the services were rendered, and to use and dispose of it as his own.   No such action had ever before been brought here, or elsewhere ; and he, therefore, confidently affirmed that it would not lie.   And if the relations between them were such at the time as had been alleged, or the design and expectation of the plaintiff was that the father would buy the house in his name, why were no instructions given, and no pains taken to secure that result ? The whole transaction clearly proved that their relations then were entirely cordial and friendly, and as properly paternal on the one side, as they were filial on the other; and were such as utterly negatived the idea and pretension on the other side that the plaintiff ever as much as supposed even, that his father had discarded him, or renounced his affection and regard for him.   But being legally entitled to his earnings at the time, and having lawfully received them, the law would not imply a promise to repay them to the plaintiff, or that he received them to and for his use; and even if an express promise by the defendant to hold the money to and for his use had been proved, it would be without consideration and a mere *nudum pactum*, for which no action at law would lie against him at

the suit of the plaintiff. If, however, there was any such understanding between them, and it amounted to anything at all, either in law or equity, it would constitute a trust, and the only remedy upon it would be in the Court of Chancery. *Lewen on Trusts* 85, 223, 224. 1 *Greenl. Ev. sec.* 266. Besides, if the agreement was, as had been alleged, that the defendant was to receive the money and invest it in the purchase of a house for the plaintiff, which he so far performed as to invest it according to his directions in a house in Wilmington, it was a contract concerning an interest in land, on which no action at law would lie without some note or memorandum, at least, of it in writing.

*Patterson,* on the same side. The emancipation of a minor child by a parent must be either express or implied, and if the former, it must be by a direct verbal or written communication to that effect made to the child himself, for a declaration made to another person, such as had been proved by one of the witnesses in this case was made by the defendant, that Martin, his son, had left his home and should never come back again, was not sufficient for that purpose, made as it was, in the absence of the son, and not to him. But it may be inferred from facts and circumstances which necessarily imply it, inconsistent with the idea or intention on the part of the parent of providing for, or retaining his authority and control over his child ; such as driving him from his house and prohibiting his return, or sanctioning the formation by him of relations in life inconsistent with his filial relations to himself as his father, which necessarily or ordinarily interfere with his duties to him as a minor child owing obedience and service, such for instance, as marriage, or binding himself to another with his approbation and consent. The occasional and not unreasonable or cruel chastisement, punishment or correction of a minor child by his father, will not release or exonerate him from his filial duties and responsibilities, or entitle him to retain his earnings in the service or employment of others against

the will of the parent, or without his express consent; and his voluntarily leaving his father's service without his sanction or procurement, cannot in law absolve him from his obligations to his parent, or to account to him for his earnings if demanded by the latter within a reasonable time. Besides, a statement or admission made by a father to another, or even to the minor son himself, that he will apply or appropriate the earnings which he has lawfully received from his labor in the employment of others with his permission and consent to his sole use and benefit, will not create or impose a legal liability on the parent to so apply or appropriate them, but is wholly *nudum pactum* in contemplation of law. It was also a well established principle of law, that a parent who has voluntarily and expressly given his child his time, or consented to his leaving his home and service and going into the employment of others, without a binding contract therefor on his part with such other persons, may at any time during his minority revoke the license and reclaim his services. *Clark v. Fitchett,* 2 *Wend.* 459. Although, as he had before observed, a father may emancipate his child during his minority, or the latter may by his consent be entitled to his own services and the earnings of them. *McCoy v. Huffman,* 8 *Cow.* 84. *Shute v. Dorr,* 5 *Wend.* 204. But the emancipation in such cases is a question of fact which may be inferred from circumstances. *Conover v. Cooper,* 3 *Barb.* 115.

It should be borne in mind, however, by the jury in this case, that they were not trying a question of damages for harsh usage or unnatural treatment of a minor son by a stern or austere parent, and which matter had only arisen collaterally in the cause as a circumstance relied on merely to prove what had been contended for on the other side, the emancipation thereby of the plaintiff from the service and authority of the defendant before the earnings in question had accrued. But there was not sufficient evidence to prove that the defendant ever drove or expelled the plaintiff from his house, or refused

to allow him to return to it. On the contrary, the evi_ dence clearly negatived such an allegation or presumption, as well as proved that if the defendant ever intended to receive and hold the earnings of the plaintiff for his sole use and benefit, he afterward changed his mind in regard to it, as he had a perfect right to do, since there was no valuable consideration for such a voluntary and gratuitous concession then contemplated by him and no legal obligation resting upon him to do so.

*Gordon,* replied.

*The Court, Gilpin, C. J., charged the jury.* Whilst it is the duty of a father to nourish, support and maintain his minor child, it is equally the duty of such child to obey and serve his father, in all that may be reasonably required of him. These duties are reciprocally binding upon the parties ; support and maintenance on the one hand and obedience and service on the other, the one being dependant upon, and compensatory of the other. And, although the general principle is clear and unquestioned, that the father is entitled to the services of his minor child, and to all that such child earns by his labor, yet, it seems to be equally clear, that, as the right of the father to the services of his child is founded upon his duty to support and maintain his child, if he should fail, neglect, or refuse to observe and perform this duty, his right to the services of his child should cease to exist. And such we hold to be the law. I speak here of the civil rights and duties or obligations which belong to the relation of parent and child. Human laws deal with these alone. There are, undoubtedly, other and higher duties of a moral and religious nature growing out of this relation, which are beyond the cognizance of any human tribunal, and with which you of course, have nothing to do, so far as this case is concerned.

If, therefore, the defendant neglected, or refused to support and maintain his son, or denied him a home, or discarded or abandoned him, so that he was forced to labor

abroad to procure a living for himself, he is not upon any principle of law or justice entitled to the earnings of his son; because under such circumstances, the law will imply that the father has emancipated, or freed the son from his service, and conceded to him the right to enjoy the fruits and profits of his own labor. A father may also voluntarily and expressly emancipate his minor son, as by authorizing him to go out and labor for his own benefit.

Or emancipation may be implied from the conduct and relations of the parties, that is to say, the emancipation, or freedom of the son to labor for his own living, may be inferred from the fact that his father has knowingly permitted him to enter into contracts and manage business for himself, or on his own account for a considerable length of time. Or when a minor son makes a contract for his services on his own account and the father knows of it and makes no objection, there is, it seems, an implied assent on his part that the son shall have his own earnings. *Armstrong v. McDonall*, 10 *Barb*. 300. If a father emancipates his minor child, and such child by industry, accumulates money, the money is *his* money and *not* his fathers. And if the father receives money from such minor child, not as due to or belonging to himself, but receives it and recognizes it as money belonging to his child, he cannot afterward legally claim or hold it as his own, on the ground of its being the fruits or profits of such child's labor; and more especially, if it was understood between them that the father received it, either to invest, or hold it for his child's benefit.

It has been contended by the counsel for the defendant that if any money was paid to him by his son, it was paid voluntarily, and that as the money was the earning of a minor child, it cannot now be recovered back. In other words, that there is no legal obligation resting on the father to restore the money to his son. Now, this depends upon the question as to whether the father by his conduct toward his son emancipated him from his service. If he emancipated him, then the money earned by the son belonged to the son; and the latter has just as much right to maintain

this action, and to recover whatever amount is due to him, as any other person would have to recover back money which he had deposited in the hands of another.

Again, it has been contended that if any money was sent by the plaintiff to the defendant, it was to be invested in real estate, and was so invested in the name of the defendant, and that under such circumstances there would be but a resulting trust in favor of the son which can only be enforced in a court of equity; and that, therefore, the plaintiff has no remedy here in a court of law. Our answer to this assumed ground of defence is, that there is no evidence in this case tending to raise such a question. If I deposit money with another to be invested for me in the purchase of real estate, it certainly cannot be presumed that I intended my agent should take title to such real estate in his own name, or that he should appropriate the money, or the real estate to his own use. If he does not invest the money at all, or invests it in his own name for his own use, or having invested it in real estate in his own name afterward sold the real estate and appropriated the proceds to his own use, I have a right to recover the money which I deposited with him in an action of assumpsit.

Did the father, either expressly, impliedly, or inferentially by his conduct toward him, emancipate him from his service? If you shall be satisfied from the evidence that he did emancipate him, then we say to you that the son was and is entitled to his own earnings. If you shall be of opinion from the evidence that the son was emancipated, then the remaining question will be whether he placed or deposited money, being his earnings, in his father's hands, and the amount which he so deposited. The burden of proof is on the plaintiff to show the fact of emancipation and the amount deposited with or in the hands of the defendant. If the plaintiff was emancipated, he is entitled to recover all that he deposited with the defendant, with interest. If he was not emancipated, he is not entitled to recover any thing.

The plaintiff had a verdict for $1,104.70